IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JERRY DEEMER | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.4:07-CV-380-Y |
| | § | |
| JEFF BONTZ, d/b/a/ | § | |
| CLASSIC AERO SERVICE and | § | |
| CLASSIC AERO SERVICE, INC. | § | |

<u>ORDER GRANTING MOTION TO DISMISS</u>

This case arises out of repairs Defendants made to Plaintiff Jerry Deemer's vintage 1948 Ryan Navion airplane. Defendants claim that because Deemer failed to pay for certain repairs, they were required to maintain possession of his plane and impose a mechanic's lien. Deemer filed this suit, which invokes the Court's diversity jurisdiction and seeks emergency injunctive and declarative relief as well as alleges causes of action for breach of contract and conversion. His complaint seeks to prevent Defendants from selling his plane pursuant to a purported mechanic's lien. Defendants have filed a motion (doc. #21) to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. After review of the pleadings in this case, the Court finds that Deemer has failed to make a *prima facie* case for personal jurisdiction over the nonresident Defendants and concludes that Defendants' motion should be GRANTED.

I.   Factual Background[1]

Jerry Deemer is a resident of Granbury, Texas, and he owns a vintage 1948 Ryan Navion airplane. Defendant Jeff Bontz resides in Aurora, Nebraska, and is the president of Classic Aero Service, Incorporated ("Classic Aero"). Classic Aero is a Nebraska corporation with its principal place of business in Aurora. Classic Aero repairs a variety of aircraft, but specializes in repairing and restoring Ryan Navion airplanes.

In November 2003, the parties entered into an oral contract to have Defendants install a panel in Deemer's plane for $3500. The parties agreed that the installation would take six weeks. That month, Deemer flew his plane to Defendants' shop in Aurora. Although Classic Aero was to perform the installation, Deemer acquired and provided the necessary parts and equipment.

Deemer flew to Aurora in July 2004 to check on the status of his plane. While there, he paid Classic Aero $11,449.33 for additional repairs it performed on his plane unrelated to the panel installation. The panel installation was not completed. In December 2004, Deemer again flew to Aurora to check on the panel installation. It still was not completed.

In April, May, and June 2005, Deemer received three invoices

---

[1] For purposes of this motion, and because the Court concludes that Deemer has failed to make a *prima facie* case supporting jurisdiction, the Court will accept all of Deemer's uncontroverted and non-conclusory factual allegations as true and resolve all controverted factual allegations in Deemer's favor. *See Panda Brandywine Corporation v. Potomac Electric Power Company,* 253 F.3d 865, 868 (5th Cir. 2001).

from Classic Aero for $5865.88, $9738.72, and $1599.82 in labor costs associated with the panel installation. Thereafter, Deemer flew to Aurora to inspect the panel installation and negotiate a final price. Despite its having issued the invoices, Classic Aero had not completed the panel installation.

Deemer filed suit in Nebraska state court in July 2006 asserting a breach-of-contract claim against Defendants and seeking replevin of his aircraft. The state-court judge granted Deemer's request for replevin; however, because Deemer failed to post the required bond, the county sheriff could not deliver the aircraft to Deemer and was forced to return it to Defendants.

On July 11, 2006, Defendants attempted to file a claim of lien on Deemer's plane with the Federal Aviation Administration ("FAA"). In their lien claim, Defendants stated that they last provided labor and materials for the plane on January 8, 2005. The FAA returned the lien claim to Defendants because, according to the FAA, Nebraska law requires lien claims on aircrafts to be filed within sixty days after the last work or materials were provided for the plane.

Defendants again attempted to file a claim of lien with the FAA on August 24, 2006. This time, Defendants claimed a lien for storage fees for the aircraft. The FAA, however, returned the lien claim stating that Nebraska law does not permit liens on aircraft for unpaid storage fees.

3

On September 12, 2006, Defendants filed a third claim of lien with the FAA. In this claim, Defendants stated that they last provided labor and materials for Deemer's plane on August 14, 2006, even though Bontz testified on August 18 in Nebraska state court that he had last performed work on the plane in August 2005. Because the lien claim states that Classic Aero last provided labor and materials for Deemer's plane within the last sixty days, the FAA recorded the lien on November 2, 2006. Deemer alleges in his complaint before this Court that Defendants fraudulently claimed they last provided labor and materials for his plane in August 2006 so they could successfully affix a lien on his plane.

Defendants sent a letter to Deemer on May 7, 2007, notifying him of their intent to sell his aircraft on July 2 to satisfy their lien. The letter informed Deemer that he could, before the sale, pay Defendants $22,262.60 plus the costs of advertising and preparation for the sale. All attempts to negotiate a delay in the sale of the aircraft failed, and Deemer filed a motion for a temporary injunction in the Nebraska state court. After a hearing, the Nebraska court denied Deemer's motion. Deemer's state-court suit is still pending with regard to his breach-of-contract claim.

Deemer then filed suit in this Court on June 29, 2007, seeking an injunction against the sale of his plane and a declaration that Defendants' lien is void. Deemer's complaint also alleged causes of action for breach of contract and conversion. The Court granted

Deemer's emergency motion for a temporary restraining order without providing Defendants an opportunity to appear and respond, and temporarily enjoined Defendants from selling Deemer's plane. Despite their objections to this Court's personal jurisdiction over them, Defendants have agreed to honor the Court's temporary restraining order until the question of jurisdiction has been resolved. The Court initially set for July 12 a hearing on the propriety of a preliminary injunction, but later continued that hearing indefinitely. The Court also gave Defendants until August 3 to challenge the jurisdiction of this Court. Defendants filed their motion to dismiss for want of personal jurisdiction on August 13.[2] Deemer filed his response on August 24.

II. Analysis

    A. Standard

When a nonresident defendant moves the Court to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the Court's *in personam* jurisdiction over the nonresident. *See Allred v. Moore & Peterson,* 117 F.3d 278, 281 (5th Cir. 1997). If the Court decides to rule on a motion to dismiss for lack of personal jurisdiction without conducting an

---

[2] Defendants filed their motion to dismiss on August 3, but the Court subsequently ordered it unfiled on August 9 due to numerous filing deficiencies. Defendants corrected those deficiencies and refiled their motion on August 13. Because the Court accepted the late filing, the Court granted Deemer an extension of time up to August 24 to file his response.

5

evidentiary hearing, the plaintiff is not required to prove personal jurisdiction by a preponderance of the evidence. Rather, a plaintiff meets his burden "by presenting a *prima facie* case that personal jurisdiction is proper." *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir. 1994). The Court accepts a plaintiff's uncontroverted factual allegations as true and resolves all factual disputes in the plaintiff's favor. *Id.* The Court, however, is not required "to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corporation,* 253 F.3d at 869.

Whether a district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant is determined by the applicable state long-arm statute as interpreted by that state and the due-process guarantees under the Fourteenth Amendment. *Allred,* 117 F.3d at 281. Texas courts have interpreted the broad language in the Texas long-arm statute to extend "as far as the federal constitutional requirements of due process will permit." *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex. 2002)(internal quotations and citations omitted). Thus, the Court's inquiry is whether Deemer has presented a *prima facie* case of personal jurisdiction that comports with the constitutional requirements of due process. *See Holt Oil & Gas Corporation v. Harvey,* 801 F.2d 773, 777 (5th Cir. 1986).

The Court's exercise of personal jurisdiction over a nonresident defendant is consistent with due process when "(1) that

defendant has purposefully availed himself to the benefits and protections of the forum state by establishing minimum contacts with the forum state; and, (2) the exercise of jurisdiction . . . does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corporation,* 253 F.3d at 867. It is essential that there be some affirmative act by the defendant that demonstrates a purposeful availment to the benefits and protections of the laws of the forum state. *Holt Oil & Gas Corporation,* 801 F.2d at 777. "This purposeful-availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or [by] the unilateral activity of another party or a third person." *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 475 (1985)(internal quotations and citations omitted). "The defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court in the forum state." *Holt Oil & Gas Corporation,* 801 F.2d at 777.

"Minimum contacts can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Alpine View Company Limited v. Atlas COPCO AB,* 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction arises when a defendant has purposefully directed his activities at the forum state and the litigation arises out of or relates to those activities. *Id.* "To exercise specific jurisdic-

7

tion, the Court must examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Holt Oil & Gas Corporation,* 801 F.2d at 777.

On the other hand, general jurisdiction will attach when the nonresident defendant's contacts with the forum state are continuous and systematic. *Alpine View,* 205 F.3d at 215. "To exercise general jurisdiction, the Court must determine whether the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction." *Holt Oil & Gas Corporation,* 801 F.2d at 777. These continuous and systematic contacts need not arise from or relate to the plaintiff's cause of action. *Alpine View,* 205 F.3d at 215.

Even if a defendant has the requisite minimum contacts to support either specific or general personal jurisdiction, the Court will not exercise jurisdiction if doing so would offend traditional notions of fair play and substantial justice. *See Holt Oil & Gas Corporation,* 801 F.2d at 789-90. In making this determination, the Court balances the burden on the defendant to litigate in this forum, the forum state's interests in the lawsuit, the plaintiff's interests in convenient and effective relief, the judicial system's interests in efficient resolution of controversies, and the state's shared interest in furthering fundamental social policies. *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 215 (5th Cir. 1999). "It

is rare to say," however, that "the assertion [of personal jurisdiction] is unfair after minimum contacts have been shown." *Id.*

B. Discussion

Deemer relies on both specific and general jurisdiction to support the Court's exercise of *in personam* jurisdiction over Defendants. Deemer contends that "Defendants' intentional filing of a fraudulent sworn lien with the [FAA] against [his] airplane, which Defendants knew to be registered with the FAA in Texas and based in Texas, is the basis for this lawsuit." (Pl.'s Resp. at 6.) Citing *Calder v. Jones,* 465 U.S. 783 (1984), Deemer argues,

> By filing a fraudulent sworn lien with the FAA, . . . Defendants have committed a tort [that] occurred in part in Texas, giving rise to jurisdiction under the Texas long-arm statute. Defendants must reasonably anticipate being haled into court in Texas because their intentional tortious actions were expressly aimed at Texas and they knew that the brunt of the injury would be felt in Texas.

(*Id.* at 8.)

Deemer also relies on Texas Civil Practice & Remedies Code § 17.003, which states:

> For the purpose of establishing title to property, settling a lien or encumbrance on property, or determining an estate, interest, lien, or encumbrance, a person who claims an interest in the property may sue another person who claims an adverse interest or a lien or encumbrance but resides outside this state, resides in an unknown place, or is a

> transient. The plaintiff is not required to
> have actual possession of the property.

While conceding section 17.003 "is typically used in conjunction with real property," Deemer maintains that "it is not limited to real property." (Pl.'s Resp. at 8.) He contends that this case is predicated on Defendants' fraudulent assertion of a possessory lien on property that is registered in and based in Texas. Deemer argues that Texas courts have held that a nonresident defendant's ownership of real property in Texas was sufficient to support *in personam* jurisdiction when the ownership of that property is the subject of the underlying suit. *See Potkovick v. Reg'l Ventures, Inc.,* 904 S.W.2d 846 (Tex.App.—Eastland 1995, no writ). Likewise, Deemer argues, a nonresident defendant's assertion of a lien on property owned in Texas and the subject of the underlying lawsuit is sufficient to confer personal jurisdiction. Deemer contends that he "has filed this action for the purpose of settling a lien or encumbrance on his personal property, as the owner of his personal property against Defendants, who claims an adverse interest or a lien or encumbrance but resides outside this state, as permitted by [section] 17.003." (Pl's Resp. at 8-9.)

Deemer's arguments are unavailing. In *Calder,* Shirley Jones, a California resident, brought suit in California against the *National Enquirer*, a Florida corporation with its principle place of business in Florida, and the *Enquirer's* distributor, reporter, and editor for libel, invasion of privacy, and intentional

10

infliction of emotional harm.  *Calder,* 465 U.S. at 784.  Both the reporter and editor were Florida Residents.  *Id.* at 786.

The *Enquirer* published a national weekly newspaper with a total nationwide circulation of over five million copies, 600,000 of which were sold in California.  *Id.*  The Supreme Court held that personal jurisdiction in California over the Florida defendants was proper "based on the effects of [the defendants'] Florida conduct in California."  *Id.* at 789.  Although the Supreme Court ruled that jurisdiction was proper based on the "effects" of the nonresident defendants' conduct on the forum state, the Supreme Court relied on the fact that the allegedly libelous story "concerned the California activities of a California resident," the article "impugned the professionalism of an entertainer whose television career was centered in California," the article drew "from California sources," and the "brunt of the harm . . . was suffered in California."  *Id.* at 788-89.  Moreover, the *Enquirer* intentionally sold its newspapers in California, and the reporter and the editor knew the story would be circulated in California.  The Court concluded that "in sum, California [was] the focal point both of the story and of the harm suffered."  *Id.*

The United States Court of Appeals for the Fifth Circuit has explained that "*Calder's* effects test is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state."  *Panda Brandywine*

*Corporation*, 253 F.3d at 869 (internal quotations and citations omitted). "The key to *Calder*," according to the Fifth Circuit, "is that the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum." *Allred*, 117 F.3d at 286 (internal quotations and citations omitted). The *Calder* decision makes clear that the nonresident defendants took affirmative steps to purposefully avail themselves of the benefits of the California economy and laws. That, together with their alleged tortious conduct that was aimed at California, was sufficient to establish the minimum contacts necessary for personal jurisdiction.

Here, Deemer's jurisdictional-factual allegations establish nothing more than a fortuitous connection with Texas. Deemer relies on the fact that Defendants' act of claiming a lien on the title to his airplane affects him, a Texas resident, and property that is normally possessed in Texas. Although Deemer claims the property is "registered" in Texas, Exhibit E to his complaint shows that the title to his plane is registered with the FAA and not any state agency in Texas. But beyond the fact that Defendants sought to encumber personal property registered in Texas and owned by a Texas resident, Deemer presents nothing to suggest that Defendants purposefully availed themselves to the benefits or protections of Texas law. The facts show that, conversely, Defendants at all times attempted to avail themselves of the protections of Nebraska

12

statutes regarding the perfection of a mechanic's lien for work they allegedly performed on Deemer's plane but for which they were not paid. While Defendants' actions were aimed at Deemer and at his plane, they were not aimed at Texas and they were not designed to purposefully avail themselves of the benefits of doing business in Texas or of the protections of Texas laws.

Additionally, even assuming section 17.003 applies to personal property registered in Texas, that statute alone cannot support a basis for exercising personal jurisdiction over foreign defendants in the absence of other minimum contacts. Accepting Deemer's argument would mean that courts in Texas could exercise *in personam* jurisdiction over a local repair shop in another state that performed repairs on a car owned by a Texas resident and registered in Texas simply because it sought to place a mechanic's lien on the car until it received payment for the repairs. Deemer's reliance on section 17.003, without more, must fail.

Furthermore, the fact that Defendants knew they were encumbering personal property owned by a Texas resident and knew it would cause harm to a Texas resident is insufficient to establish a *prima facie* case for *in personam* jurisdiction. *Cf. Panda Brandywine Corporation,* 253 F.3d at 869 (holding sole evidence that the defendant knew the plaintiffs were Texas residents and knew its actions would intentionally cause harm to them in Texas insufficient to establish *prima facie* case of personal jurisdiction); *see*

13

*also Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, (Tex. 2005)(holding allegation that a nonresident committed a tort in Texas insufficient by itself to establish necessary minimum contacts for personal jurisdiction).

According to Deemer's factual allegations, Defendants sole contact with Texas is their entering into an oral contract with a Texas resident to perform work on an airplane that is normally possessed in Texas. *Cf. Holt Oil & Gas Corporation,* 801 F.2d at 778 ("On several occasions this Court has observed that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction."). On the other hand, the oral contract was performed in Nebraska by a Nebraska resident and corporation. At all times, Defendants' conduct in the repair and restoration of Deemer's plane was subject to Nebraska law. And Deemer flew repeatedly to Nebraska to check on the status of the repairs done to his plane and on one visit paid more than $11,000 in repair costs to Defendants.

Deemer omits any factual allegations regarding the formation of the contract. He fails to allege any facts as to whether he contacted Defendants or Defendants contacted him. He omits any facts as to how he came to learn of Defendants' ability to repair and restore his plane. And he presents no evidence that Defendants in anyway advertise their services in Texas or in any forum that gives them visibility outside the state of Nebraska.

Instead, Deemer presents the Court with a periodical called *The Navioneer* that contains an article mentioning Defendants and informing the reader that Defendants specialize in Ryan Navion aircraft restorations. (Pl.'s Resp. at Ex. A3.) The article states that Defendants are capable of designing and installing custom Navion instrument panels and recommends them to anyone seeking to restore a Navion aircraft.

Putting aside the fact that Deemer presents no evidence as to the circulation of *The Navioneer,* and assuming it is available in Texas, there is no evidence that the article was the result of any affirmative act of Defendants. There is no suggestion that Defendants have control over a third party's writing about them in what the Court assumes is a nationally circulated periodical. "In order for an exercise of personal jurisdiction to be consistent with due process, the nonresident defendant must have some minimum contact with the forum [that] results from *an affirmative act on the part of the nonresident*." Holt Oil & Gas Corporation, 801 F.2d at 777 (emphasis added). To hold otherwise would subject all nonresident defendants to the absurdity of being under the jurisdiction of a myriad of forums based on the acts of third parties who are beyond the control of the nonresidents.

Deemer also presents the Court with the advertisement Defendants placed in a magazine called *Trade-a-Plane*. The classified advertisement in the June 2007 issue simply states that

a 1948 Ryan Navion is for sale by secret bid, that bids are due no later than July 1, and that more information and pictures can be obtained by sending an email.[3] Assuming that *Trade-a-Plane* is circulated in Texas, that act alone is insufficient to establish Defendants' minimum contacts with Texas. Although the sale could be potentially advertised outside the state of Nebraska, the sale would occur in Nebraska under its laws. It is under Nebraska law that Defendants claim a lien on Deemer's plane, which enables them to sell it in the first place.

Alternatively, Deemer relies on general jurisdiction as a basis for this Court's *in personam* jurisdiction over Defendants. In particular, he argues that "Defendants are subject to general jurisdiction in Texas by virtue of their purchase and subsequent nationwide marketing of the entire inventory of spare parts . . . left over from the company [that] last manufactured" the Navion plane. (Pl.'s Resp. at 9.) Here, again, Deemer is relying on the article published in *The Navioneer*. That article states that the last Navion factory closed, its remaining parts were sold at auction, and that Defendants were a successful bidder for some of those parts. Deemer argues,

> Given that [Defendants'] extensive inventory of Navion aircraft parts is only of potential benefit to persons who own or are performing maintenance on Navion aircraft and that, according to [FAA] records, 110 Navion air-

---

[3] The email address on Exhibit 4 to Deemer's complaint is illegible.

16

> craft are registered in Texas, it is the height of disingenuous for [Defendants] to represent that he has no contact with and no desire to do business with Texas.

(*Id.*)  But general *in personam* jurisdiction does not rest on whether Defendants own parts to an aircraft and is capable of repairing and restoring an aircraft that might be owned by numerous Texas residents.  Rather, to establish general jurisdiction, Deemer must show that Defendants have contacts "with the forum state [that] are continuous and systematic."  *Alpine View,* 205 F.3d at 215.  It would be disingenuous for the Court to conclude it has general *in personam* jurisdiction over Defendants simply because they own parts to and are capable of repairing and restoring a type of plane that numerous Texans may own.  Deemer makes no allegation that Defendants systematically and continuously avail themselves to the benefits of Texas law for the purposes of providing repair and restoration services to Navion airplanes owned by Texas residents.

Finally, Deemer requests an opportunity to conduct discovery to demonstrate that Defendants have sufficient ongoing and systematic contacts with Texas to support general jurisdiction.  The Court declines to do so.  As discussed above, Deemer has failed to present a *prima facie* case of either specific or general *in personam* jurisdiction over Defendants.  To allow Deemer to conduct discovery on Defendants would be to allow him to embark on a fishing expedition on a party over which this Court lacks jurisdiction.  To be entitled to discovery, Deemer must first make a *prima*

*facie* case, and since he fails to do so, the Court denies his request to conduct discovery.

III. Conclusion

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over Defendants. Defendants' motion to dismiss is GRANTED. Because the Court lacks *in personam* jurisdiction over Defendants, its order restraining them from selling Deemer's aircraft is null and void and hereby is VACATED. Deemer's case is DISMISSED WITHOUT PREJUDICE.

SIGNED October 25, 2007.

                                                TERRY R. MEANS
                                                UNITED STATES DISTRICT JUDGE